[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14459
Non-Argument Calendar

_____

D.C. Docket No. 5:11-cv-00402-WTH-PRL

NICHOLAS SALERNO,

Petitioner–Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents–Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 23, 2016)

Before MARCUS, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Nicholas Salerno, a Florida state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. We agree with the district court that habeas relief is not warranted, and thus affirm.

## I. BACKGROUND

Petitioner was charged in 2003 with one count of lewd and lascivious molestation of a child less than twelve years old, two counts of capital sexual battery on a child less than twelve years old, and three counts of using a child in a sexual performance.[1] The molestation count alleged that Petitioner intentionally touched the genitals of a victim in a "lewd and lascivious manner" in violation of Fla. Stat. § 800.04(5)(a) and (b). The sexual battery counts alleged that Petitioner caused his penis to "unite with or penetrate the vagina and/or anus" of two victims in violation of Fla. Stat. § 794.011(2)(a). The sexual performance counts alleged that Petitioner employed or induced three victims to "engage in a sexual performance" in violation of Fla. Stat. § 827.071(2). All of the charges stemmed from a video Petitioner and his wife made showing Petitioner performing sexual acts with three girls who were between the ages of eight and ten when the charges were brought and several years younger when the video was made.

---

[1] The charging document was amended in April 2004 to clarify that the sexual battery counts constituted capital sexual battery.

Petitioner entered into a plea agreement in which he agreed to plead *nolo contendere* to two counts of attempted capital sexual battery, which is a lesser included offense of capital sexual battery, one count of lewd and lascivious molestation, and three counts of using a child in a sexual performance. As part of the agreement, Petitioner admitted a violation of probation concerning a prior lewd and lascivious molestation charge. The agreement stated that Petitioner would be adjudicated guilty as to all counts and sentenced to a total of 35 years in prison, followed by 10 years of sex-offender probation. Petitioner acknowledged by signing the agreement that he fully understood the charges against him, that there were sufficient facts to support the charges, and that he did not contest the charges. He further affirmed that his attorney had discussed with him any available defenses and that he was satisfied with his attorney's advice.

The trial court subsequently conducted a plea hearing, during which Petitioner stated under oath that he understood the rights he was waiving by entering the plea, such as the right to a jury trial and the right to appeal if he was found guilty. Petitioner affirmed at the hearing that he was satisfied with the advice provided by his attorney, and he acknowledged that he understood the terms of the plea and was entering the plea freely and voluntarily. The trial court noted that the court and the parties had discussed the case numerous times, and it found that the plea was freely and voluntarily entered and supported by a factual basis.

3

The trial court later conducted a sentencing hearing, during which it clarified that Petitioner would be sentenced to 30 years for one of the attempted sexual battery charges, the maximum sentence for that offense, plus 5 consecutive years for Petitioner's admitted probation violation, to be followed by 10 years of sex-offender probation for the second attempted sexual battery.  After he was placed under oath at the sentencing hearing, Petitioner argued that he was told he would receive no sentence for the probation violation, and he complained about the quality of his legal representation.  He also stated that he had asked, but not been given, the opportunity to "see the elements of the crime" and that he could not plead guilty to every element because he did not know what the elements were. The trial court responded by asking whether Petitioner had seen the video of his offenses, and Petitioner said that he had.  The trial court said that it had also seen the video, which "offered all the elements."

The trial court then asked Petitioner whether he had any other problems with his attorney's representation.  Petitioner said the only problem he had was with the sentence on the probation violation.  The court reiterated that Petitioner had freely and voluntarily entered a plea agreement providing for a total sentence of 35 years in prison, and he adjudged Petitioner guilty as to all of the charges listed in the plea agreement.  To address Petitioner's stated concern, the court sentenced him as follows:  (1) time served on the probation violation, (2) 30 years on one of the

4

attempted sexual battery charges, (3) 5 years on one of the lewd and lascivious molestation charges, to run consecutively with the 30 years, (4) 10 years of sex-offender probation for the second sexual battery charge, to begin at the conclusion of the 35-year prison sentence, and (5) 10 years of regular probation for the remaining convictions, to run concurrently with the sex-offender probation.  The sentence was what Petitioner had agreed to in the plea agreement, except that it included an additional 10 years of probation running concurrently with the sex-offender probation.

Petitioner did not directly appeal his convictions or sentence, but he filed a state post-conviction motion under Fla. R. Crim. P. 3.850.  Among other asserted grounds for relief, Petitioner argued that he involuntarily entered into the plea agreement due to his attorney's poor advice and coercion.  In support of that ground, Petitioner claimed that he was not informed of the elements of the offenses he was charged with committing.  A Florida trial court denied Petitioner's Rule 3.850 motion, finding that the record conclusively showed his plea was voluntary. The Florida Court of Appeal affirmed the denial.

Petitioner subsequently filed a motion to vacate his judgment and sentence pursuant to Fla. R. Crim. P. 3.800.  In support of his motion, Petitioner argued that his sentence violated the plea agreement because he did not agree to multiple probation sentences, which left him exposed to a longer imprisonment term if he

5

violated probation.  A Florida trial court granted this motion in part, and Petitioner was resentenced as follows:  (1) 30 years on one of the attempted sexual battery counts, (2) 5 years each on the lewd and lascivious molestation and sexual performance counts, to run concurrently with each other and consecutively to the 30-year sexual battery sentence, and (3) one 10-year term of sex-offender probation on the remaining sexual battery count, to begin at the conclusion of Petitioner's 35-year prison sentence.  The Florida Court of Appeals affirmed the resentencing in July 2010.  *See Salerno v. State*, 43 So. 3d 64 (Fla. 5th DCA 2010).

Petitioner filed this federal § 2254 petition on July 14, 2011.[2]  He asserted numerous grounds for relief, including a claim that his plea was not voluntary because he was not informed of the elements of the offenses he was charged with committing.  The district court denied the petition in its entirety and declined to issue a certificate of appealability ("COA").  This Court granted a COA limited to the following issue:  "Whether the state court's decision was contrary to, or an unreasonable application of, federal law when it denied [Petitioner's] claim that his due process rights were violated when he was not informed of the elements of the

---

[2]  The State acknowledged in its response that, excluding the time tolled by pending state appeals, the petition was filed within the one-year limitations period following Petitioner's resentencing.  *See Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292–93 (11th Cir. 2007) ("[T]he period begins to run when both the conviction *and* sentence are final.") (emphasis in original).

charges against him before pleading guilty." Having now considered that issue, we agree with the district court that federal habeas relief is not warranted.

## II.  DISCUSSION

### A.    Applicable Standard

We review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Terrell v. GDCP Warden*, 744 F.3d 1255, 1261 (11th Cir. 2014). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a highly deferential standard for reviewing the Florida court's decision on the merits of Petitioner's claim. *See id.* The AEDPA only authorizes federal habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if it was "based on an unreasonable determination of the facts in light of the evidence presented." *Id.* (quoting 28 U.S.C. § 2254(d)) (internal quotation marks omitted).

A decision is "contrary to" federal law if it conflicts with the governing rule set forth by the United States Supreme Court, or arrives at a different result than the Supreme Court when faced with materially indistinguishable facts. *Id.* (citing *Kimbrough v. Sec'y, Dep't of Corr.*, 565 F.3d 796, 799 (11th Cir. 2009)). "An 'unreasonable application' of clearly established federal law occurs when the state court correctly identifies the governing legal principle . . . but unreasonably applies

7

it to the facts of the particular case." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)) (internal quotation marks omitted).  This Court has emphasized the difference between an "unreasonable" and an "incorrect" application of federal law.  *Terrell*, 744 F.3d at 1261.  As we explained in *Terrell,* even a "strong case for relief" does not necessarily mean that the state court's denial of relief was "unreasonable."  *Id.* (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)) (internal quotation marks omitted).  *See also Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011) (stating that habeas relief is not available if "some fairminded jurists" could agree with the state court's decision).

Likewise, a state court's factual findings are not "unreasonable" just because the federal habeas court would have viewed the facts differently if it had considered them in the first instance.  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1230 (11th Cir. 2014).  Rather, a state court's factual findings are only unreasonable if "no fairminded jurist could agree" with them.  *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citing *Harrington*, 562 U.S. at 102) (internal quotation marks omitted).  *See also Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) ("The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but [the

petitioner's factual claim]") (quoting *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005)) (internal quotation marks omitted).

## B.      Petitioner's Due Process Claim

The Due Process Clause requires that a guilty plea be "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970) (internal quotation marks omitted). This requirement is only met if a defendant has "real notice of the true nature of the charge against him" prior to entering a plea. *Id.* (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). A defendant has such notice "when he has been informed of both the nature of the charge to which he is pleading guilty and its elements." *Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)). "In addition, the defendant should understand how his conduct satisfies those elements." *Id.* at 944.

We have recognized that a defendant typically receives detailed information about the elements of the charged offense from his attorney prior to the plea hearing. *Id.* As such, it is not essential that the trial court advise a defendant, during the plea hearing, of each element of the offense. *Id.* Rather, due process is satisfied if a defendant was previously informed of the critical elements and he understands them. *Id. See also Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir.

9

1991) ("The defendant does not necessarily need to be told the nature of the offense and elements of the crime at the actual plea proceedings; a knowing and intelligent guilty plea may be entered on the basis of the receipt of this information, generally from defense counsel, before the plea proceedings."). The extent to which the sentencing court must further explain the elements varies, depending on the nature of the case, the complexity of the charge, and the characteristics of the defendant. *Gaddy*, 780 F.2d at 945. *See also United States v. Telemaque*, 244 F.3d 1247, 1249 (11th Cir. 2001) ("Whether the court has adequately informed the defendant of the offense's nature turns on a variety of factors, including the complexity of the offense and the defendant's intelligence and education.").

Petitioner claims that his due process rights were violated because he was not informed of the elements of the charges against him before entering his guilty plea. The Florida trial court rejected this claim when ruling on Petitioner's Rule 3.850 motion. Specifically, the Florida court found that the record conclusively refuted Petitioner's claim, citing evidence that:

> [D]uring the plea colloquy, [Petitioner] stated under oath that he freely and voluntarily entered his plea. He stated that he understood that he was giving up any defenses he may have had and that the issue of his guilt or innocence was gone forever. He acknowledged his guilt or that the plea was in his best interest.

The Florida court noted further that Petitioner had benefitted from the plea agreement because he was allowed to plead to attempted capital sexual battery,

10

which carries a maximum 30-year sentence, whereas capital sexual battery carries a life sentence. The Florida Court of Appeal affirmed *per curium* without opinion. *Salerno v. State*, 945 So. 2d 523 (Fla. 5th DCA 2006).

Petitioner has not shown that the Florida court's decision was contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts in light of the evidence adduced in state court. To the contrary, the decision is amply supported by the evidence in the record and fully comports with the requirements of due process discussed above. Petitioner's charging document clearly set out the elements of each offense Petitioner was charged with committing and the exact manner in which he was alleged to have committed it. The charges are not particularly complex.[3] Nor is there any indication Petitioner was mentally incapacitated. *Cf. Henderson v. Morgan*, 426 U.S. 637, 646–47 (1976) (concluding that a defendant with an "unusually low mental capacity" did not voluntarily plead guilty to second degree murder where the element of intent was not explained to him).

By signing the plea agreement, Petitioner acknowledged that he was aware of and fully understood the charges against him and that his attorney had discussed with him any available defenses. At the plea colloquy, Petitioner stated under oath

---

[3] The capital sexual batteries simply required that one of the acts described in the sexual battery statute be committed on a juvenile under 12. Fla. Stat. § 794.011(2)(a). They did not require any specific intent. *See Wright v. State*, 675 So. 2d 1009, 1010 (Fla. 2d DCA 1996).

11

that he was satisfied with the services provided by his attorney and that his plea was freely and voluntarily given.  When asked if he had any questions about the plea or any information provided by his attorney, Petitioner said he did not.  Based on Petitioner's testimony, and on the numerous discussions the parties had about the case during plea negotiations and at the status conference, the trial court found that there was a sufficient factual basis for the plea and that it was freely and voluntarily entered.

At his sentencing hearing a few weeks later, Petitioner stated, contrary to his representation in the plea agreement and his testimony at the plea hearing, that he was not aware of the elements of his offenses.  The trial court referred Petitioner to the video he and his wife had made showing Petitioner directly engaged in the offenses he was charged with committing, and Petitioner affirmed that he had seen the video.  The court then advised Petitioner that the video depicted all of the elements of the charged offenses.  Petitioner did not thereafter indicate that he had any additional questions about the elements or move to withdraw his plea, and the court reiterated its previous finding that the plea was freely and voluntarily entered.

Based on these facts, there simply is no basis for upending the Florida court's decision that Petitioner's plea was voluntary.  The record as a whole reflects that Petitioner understood that he was pleading guilty to multiple counts of capital sexual battery, the elements of which offense—"causing his penis to unite

12

with or penetrate the vagina and/or anus" of a victim under the age of 12—were depicted on a video that Petitioner himself created and that he had an opportunity to view before pleading. Record evidence similarly supports the Florida court's finding that Petitioner understood the critical elements of his molestation and sexual performance counts when he entered his *nolo* plea.

### III. CONCLUSION

For the reasons stated above, we affirm the denial of Petitioner's § 2254 petition for a writ of habeas corpus.

**AFFIRMED.**